(48 App. Div. 603.)

### GERDING v. FUNK.

(Supreme Court, Appellate Division, Second Department. March 13, 1900.)

1. CORPORATION—REORGANIZATION COMMITTEE—SERVICES—CHAIRMAN'S LIABILITY—INDIVIDUAL PROMISE.

The chairman of a corporation reorganization committee promised plaintiff's assignor in writing that, in payment for services rendered and to be rendered in the reorganization, he would give plaintiff's assignor certain bonds belonging to the committee, the agreement to be subject to ratification by the committee, which he promised to do all in his power to secure. The services were rendered under employment by the chairman. The assignor testified that he refused to work, except for the chairman personally. The committee ratified the agreement by delivering the bonds to the chairman. *Held*, that the promise was the personal obligation of the chairman, and not that of the committee, and that the chairman was personally liable thereon.

2. SAME—SECURITIES—FAILURE TO ASSIGN—MEASURE OF DAMAGES.

Where damages are sought for a failure to assign certain securities, the measure of damages is prima facie the face value of the securities, and the defendant, if he seeks to reduce that amount, must show affirmatively that the market value of the securities was below par.

3. SAME—PROMISE TO ASSIGN—ORDER FOR DELIVERY—DECLARATION—SATISFACTORY SERVICES.

Defendant's written promise to turn over to plaintiff's assignor certain securities belonging to a corporation reorganization committee, of which defendant was chairman, in consideration of services rendered in the reorganization of a corporation, and a subsequent order on the trustee holding the securities directing him to deliver them to the assignor, constitute a declaration by defendant that at that time the services of plaintiff's assignor were satisfactory, and contradict evidence that he had opposed the work of the committee, since the parties are presumed to have had the whole matter before them when the promise and order were executed.

4. SAME—ACCOUNT STATED—SUBSTANTIAL JUSTICE—AFFIRMANCE OF JUDGMENT.

Where plaintiff declared on a letter, as an account stated, which contained the statements that the amount defendant agreed therein to pay

plaintiff was for both past and future services, and that the agreement should be subject to ratification by a third person, judgment for plaintiff will be affirmed, though the letter was not in strictness an account stated; the complaint having alleged all the facts, the evidence of the whole transaction between the parties having been given, and substantial justice having been reached.

**5. SAME—ASSIGNOR—STATEMENTS AFTER ASSIGNMENT—EVIDENCE.**

Evidence of acts or declarations of an assignor of a claim, after assignment, which tend to discredit the claim, are properly excluded, though the assignee was present when such acts or declarations occurred, since the assignee cannot be presumed to have assented to the truthfulness of statements disparaging his own claim.

**6. SAME—MINUTES OF COMMITTEE.**

Minutes of a reorganization committee's meetings, showing statements of a member that plaintiff's assignor had opposed the committee's work, and consequently plaintiff's claim for his assignor's services in the work of reorganization was fraudulent, are properly excluded; it appearing therefrom that the assignor denied the truth of the statements, and the committee having before ratified the claim by turning over to its chairman funds with which to pay it.

Appeal from judgment on report of referee.

Action by Charles Gerding, Jr., against Isaac K. Funk to recover as assignee of an account stated. From a judgment in favor of plaintiff entered in a referee's report, defendant appeals. Affirmed.

The following is the opinion of the referee:

"The complaint in this action alleges that one Charles Gerding performed work and services for the benefit of the defendant, and that on or about the 31st day of January, 1896, an account was stated between them, the result of which was that there was found due from the defendant to the plaintiff the sum of $5,000, which sum the defendant then and there promised and agreed to pay to the plaintiff in the bonds of the Harriman & Northeastern Railway Company, which said bonds were alleged by the defendant to be of the value of $5,000; that the defendant agreed to deliver said bonds to Gerding, but he has neglected and refused to do so, and that the claim was assigned by Gerding to the plaintiff before the bringing of the action; and the complaint demands judgment for the sum of $5,000, with interest. The defendant denies the account stated, denies that he stated what the value of the bonds was, denies that he promised and agreed to deliver the bonds, and denies the assignment, and also alleges that it was not bona fide. It also alleges that the defendant was the chairman of the reorganization committee of the East Tennessee Land Company, being a voluntary organization of the creditors and stockholders of the company; that the company is insolvent; and that he acted as chairman in his dealings with Gerding, and that Gerding knew these facts. It also alleges that Gerding induced Dr. Funk, as chairman, and that he as such agreed, to employ him; and that while so employed he antagonized the interests of his employers, and sought to bring about a failure of the objects which they had in view. It also alleges that a certain order, which will be hereafter referred to, was given him on the untrue representations made by the assignor, Gerding, to the defendant as to his service; that Gerding never performed completely the services which he agreed to render; and that the bonds never became due to him from the reorganization committee. It appears from the evidence that there were several corporations existing in East Tennessee in which, in one way or another, the defendant was interested, as were some of his friends, and that he was in fact the chairman of the reorganization committee, composed of a number of persons. These corporations were in litigation, and various parties with whom the defendant was connected were engaged in efforts to extricate them from the difficulties in which they were involved. The assignor, Gerding, was, in some way or other, also interested in some of these enter-

prises. It is clear from the proof that the assignor, Gerding, had been employed in these efforts at extrication by Dr. Funk, either individually or as chairman of the reorganization committee. The plaintiff's assignor claims that his employment commenced some time in 1894, and was continued on down to the early part of the year 1896; that when this arrangement was made with the defendant he distinctly stated that he would have nothing to do with the work of the reorganization committee as such, but that he would act only for and under Dr. Funk. The arrangement was finally put in writing on the 31st day of January, 1896, in the following letter, which was written upon the letter head of the reorganization committee:

"'New York, January 31st, 1896.

"'Mr. Charles Gerding, Tremont, New York—Dear Sir: I hereby agree to give you $5,000 of the bonds of the Harriman and Northeastern Railroad, the same to be payment in full for withdrawal of suit for right of way claims and for help in various ways which you have rendered and may render to bring about the reorganization of the land company. This agreement is subject to the ratification of the reorganization committee, and I will do everything in my power to secure such ratification and the delivery of the bonds in April.

"'Yours, very respectfully,          I. K. Funk, Chairman.'

"Subsequent to the date of this letter, further services were rendered by the assignor, Gerding, and, on the 8th of June, Dr. Funk gave Mr. Gerding the following letter, which is also written upon the letter head of the reorganization committee:

"'New York, June 8, 1896.

"'F. L. Hine, Trustee, Astor Place Bank, New York City—Dear Sir: Please deliver to bearer, Mr. Charles Gerding, $5,000 of Harriman & Northeastern Railroad bonds; and oblige,

"'Yours, very respectfully,          I. K. Funk, Chairman.'

"Mr. Gerding and the plaintiff took this letter to the person to whom it was addressed, Mr. F. L. Hine, who was holding the bonds as trustee for the persons interested, and demanded the bonds. Hine declined to deliver them. Thereupon, some months thereafter, in 1896, Dr. Funk withdrew from the position of chairman of the reorganization committee, and all the property of the committee was turned over to Dr. Funk, who agreed to finance the affairs of the committee, and held this property for his protection. About that time Dr. Funk made a statement of the affairs of the reorganization committee to the persons interested in it, and in it appears the claim of Mr. Gerding, viz.: 'Chas. Gerding, services, $5,000.'

"There is much conflict in the testimony in regard to the transactions connected with the claim asserted by the plaintiff, but it seems to me that the solution of the business, so far as respects the claim in this suit is concerned, is not difficult.

"The letter of the 31st of January appears to be a promise on the part of Dr. Funk to deliver to Gerding $5,000 of bonds for services rendered and to be rendered, and particularly for discontinuing a certain right of way suit. The letter distinctly states that this arrangement between Dr. Funk and Gerding is subject to the ratification of the reorganization committee, which he agrees to do everything he can to procure. It is apparent from Dr. Funk's own testimony that the ratification provided for in the letter was obtained in July, 1896, as $5,000 of bonds were then actually delivered to him as a separate transaction for the purpose of meeting this obligation. The bonds were placed wholly at the discretion of Dr. Funk as to their delivery to Mr. Gerding; he was to be the sole judge in the matter.

"Upon this state of facts, as shown by the undisputed evidence, it seems to me clear that the obligation to deliver the bonds became a personal one on the part of Dr. Funk, if these bonds had actually been earned and the contract was performed. It must be assumed, upon the letter of January 31st, that the services of Mr. Gerding down to the time it was written were satisfactory, and that letter states that it was hoped or expected that the bonds would be delivered by April 1st. They were not delivered at that

date, and Gerding, after the date of the letter, continued to render services. On the 8th of June, Dr. Funk delivered to Gerding the order to which I have referred. This order contains no reservation, and is a distinct and positive request to Mr. Hine to deliver the bonds.

"I do not attempt to reconcile the contradictory evidence touching the verbal conditions and statements which are alleged to have been made at the time of the delivery of the letter of June 8th, but accept the order as importing just what on its face it purports to be. It is clear that at that time Gerding, the assignor, was entitled to the bonds; and it is very clear that, down to the time of the delivery of the order and the resignation of Dr. Funk as chairman, there was, so far as the written evidence discloses, no failure on the part of Gerding to do what belonged to him to do in that regard. It seems to be the clear import of the paper that at that time Gerding's services were complete. The late letters of Dr. Funk to Mr. Gerding all seem to proceed upon the idea that the services of the former had been faithful. On June 2d, shortly before the order was given, Dr. Funk wrote an earnest and friendly letter to Mr. Gerding, which one would think could not have been written if Mr. Gerding had not been faithful to his employment. On the 5th of August is another letter equally inconsistent with bad faith on the part of Mr. Gerding, and on September 12th, about the time of the resignation of Dr. Funk, is another letter, also quite inconsistent with bad faith on the part of Mr. Gerding. On September 17th is another in precisely the same tone, in which he speaks 'of the $5,000 of bonds that you [Gerding] are to receive.' At that time Dr. Funk had in his hands the $5,000 of bonds already referred to, and set apart, as I have already said, for this particular obligation.

"After the action of the reorganization committee had been taken which followed the delivery of these two papers, Dr. Funk, having in his possession or under his control $5,000 in bonds, was requested to deliver them, and he declined to do so.

"It is strenuously insisted that the agreement represented by the letter of the 31st of January, 1896, was with the reorganization committee, and not with Dr. Funk individually. The reorganization committee was a voluntary association composed of persons who were interested in the enterprises in Tennessee, residing in different parts of the country. It is not natural to suppose that a person making a contract in regard to the business which that committee had in hand would, if he gave the subject consideration, make a contract with the committee as such, having in view, as he must be supposed to have had, the difficulties attendant upon an attempt to enforce such a contract. Of course, it is not impossible that a capable business man would do this, but it is hardly a presumable thing for such a man to do.

"The phraseology of the letter in its contracting portion is applicable solely to individuals. It starts out with 'I,' that 'I' meaning Dr. Funk, and the condition or reservation which is attached to it is of the same personal and individual character.

"In Catholic Institute v. Bitter, 87 N. Y. 250, where this question was under consideration, the contract sued on and held to be an individual contract contained very much such a stipulation as the letter of Dr. Funk contains in regard to ratification. That controversy, it is true, arose upon a demurrer to the complaint, but the agreement was a part of the complaint, and presented, so far as the face of the papers is concerned, precisely the question that is here exhibited. The question of the construction of the contract in this regard was distinctly raised in the points of counsel on both sides. The court, however, held that the contract was the personal contract of the individual who signed it, and who attached to his name the descriptive words, 'Pres. of Buffalo Catholic Inst.'

"In Bank v. Wallis, 150 N. Y. 455, 44 N. E. 1038, which was an action on a promissory note, upon one end of which was printed 'Wallis Iron Works,' and which was signed, 'William T. Wallis, President; George T. Smith, Treasurer,' the court held that it was the note of the individuals.

"In Bank v. Clark, 139 N. Y. 307, 34 N. E. 908, upon the end of the note in question was printed 'Ridgewood Ice Co.,' and it was signed, 'John

Clark, Prest.,' at one corner, and 'E. H. Close, Treas.,' at the other. The court say (page 312, 139 N. Y., and page 909, 34 N. E.): 'The appearance upon the margin of the paper of the printed name "Ridgewood Ice Company" was not a fact carrying any presumption that the note was, or was intended to be, one by that company.'

"It seems unnecessary to multiply citations on this point. I think upon settled law that the promise is the individual promise of Dr. Funk. One would think that had he intended to avoid personal responsibility, and place that responsibility upon his associates collectively, his familiarity with affairs would have led him to use words quite different from those employed in the letter. This conclusion is quite in harmony with the evidence in the case. Mr. Gerding, the assignor, stated on cross-examination that he informed Dr. Funk right along that he would act for him, but that he would not act for the committee. His testimony is not contradicted by the defendant, though his recollection is that these declarations of the assignor, Gerding, were made subsequent to the 31st day of January, 1896. When the committee came to act, so far as the testimony in the case shows, upon this claim of Gerding, it placed the $5,000 of bonds in Dr. Funk's hands. They were absolutely under his control, thus going upon the idea, as it seems to me, that its act was simply for the purpose of protecting Dr. Funk in the performance of his contract; that is to say, that the provision in the letter in regard to ratification was a provision inserted by Dr. Funk for his protection as regards his associates. The contract was not to be, in effect, a contract until the committee had stated to him that it would protect him. It seems to me that this is the full scope of the reservation in the letter. In this aspect of the case, then, under the complaint as it is framed, it seems to me that Mr. Gerding, the assignee, is entitled to recover. I understand the rule in regard to a recovery of money in such an action as this to be well summarized in Nininger v. Banning, 7 Minn. 274, 283 (Gil. 213): 'Where the property sued for in trover is a chose in action, as a bill, note, bond, or other security for the payment of money, it seems that the measure of damages is, prima facie, the amount due on the security; the defendant being at liberty to reduce that valuation by evidence showing payment, the insolvency of the maker, or any fact tending to invalidate the security.' See, also, City of Winona v. Minnesota Ry. Const. Co., 29 Minn. 68, 76, 11 N. W. 228. The court of appeals in Booth v. Powers, 56 N. Y. 22, holds the same view, and applies it to actions other than those known technically as in trover. If, therefore, Dr. Funk desired to reduce the recovery below the par value of the bonds, the burden rested upon him to show that they were worth less than their face, viz. $5,000.

"As to the question of the assignment, dated the 15th of June, 1896, it is adequate, in my judgment, to carry the claim to the assignee, and estop the assignor, and I must hold that the title passed to plaintiff.

"Now, as to the defenses. The statement which I have already made seems to me to establish the proposition that Dr. Funk is here personally liable for this sum if any one is liable. There is no evidence in the case showing that the reorganization committee, as such, or any member of it, ever became a party to the agreement represented by the letter of the 31st of January, and the letter itself does not go upon the ground that the organization or the several individuals composing it became responsible, but, on the contrary, as it seems to me, it goes upon the ground that Dr. Funk is the responsible party when the transaction was ratified by the reorganization committee, and that ratification took place when the $5,000 of bonds were placed in Dr. Funk's hands.

"The other claim is that Mr. Gerding not only failed to perform his contract, but that he also exerted himself to defeat the purposes of the reorganization committee. I cannot sustain this defense upon the evidence, for it appears to me that the action of Dr. Funk, in giving the letter of the 31st of January, and then in giving the order, constitutes very clearly a declaration that at the time the services were satisfactory, and his subsequent letters confirm this view. It is clearly established that the right of way suit was discontinued. How important the services were that Mr. Gerding rendered it is impossible to determine from the evidence, nor is it

important that I do so. The parties must be presumed to have had all that matter before them when the papers were written and delivered. Besides that, I think that the evidence as to the failure of Gerding to perform his duties, and his assuming an antagonistic position to that which it was his duty to assume, is too indefinite and too uncertain to justify a finding against him in that regard.

"These observations lead me to the conclusion that judgment must be ordered for the plaintiff for the sum of $5,000, with interest from the 1st day of August, 1896, amounting in all to $5,732.20, together with the costs of this action."

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and WOODWARD, JJ.

Wm. Hepburn Russell (Wm. Beverly Winslow, on the brief), for appellant.

Abram Kling, for respondent.

GOODRICH, P. J. The facts are so fully stated in the opinion hereto appended of the referee, Cephas Brainerd, Esq., as not to require repetition. Nor would any addition to that opinion be necessary, except for points argued before this court. It is true that the action was brought as upon an account stated, based on the letter of the defendant dated January 31, 1896. A good definition of "account stated" is given in 1 Enc. Pl. & Prac. 87, as follows: "An 'account stated' is an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions and promising payment." The letter, however, contains a statement that the amount named is for "withdrawal of suit for right of way claim, and for help in various ways which you have rendered and may render," and that the agreement is "subject to the ratification of the reorganization committee." If the agreement is not strictly in accordance with the definition quoted, because it referred to future services, and was subject to ratification by other parties, it is sufficient to say that the complaint alleged the facts upon which the plaintiff's right of action was based, that the case was tried on that theory, that evidence of the whole transaction between the parties was given, and that substantial justice has been reached. While an amendment would not be allowed to support the reversal of a judgment (Volkening v. De Graaf, 81 N. Y. 268, 272), it may and should be allowed to sustain a judgment of this character, where all the facts have been before the referee, and by him passed upon. Besides, it is well settled that, under our present system of pleading, a suit does not fail now, as formerly, because the plaintiff has made a mistake as to form of remedy. Emery v. Pease, 20 N. Y. 62.

The referee, on conflicting evidence, found facts sufficient and necessary to sustain the judgment in favor of the plaintiff, and with such findings, after a careful examination of the voluminous record, we see no reason to interfere.

There are several objections to the exclusion of evidence, only one of which seems to us to require consideration. The defendant offered in evidence the stenographer's minutes of three meetings of the reorganization committee of the Harriman & Northeastern Railroad

Company's affairs, at which Gerding, Sr., was present. Objection being made, the testimony was excluded, and properly. In the first place, Gerding, Sr., assigned to the plaintiff, in June, 1896, the claim upon which this action is founded. The meetings in question occurred in April and May, 1897. Of course, no act or declaration of Gerding, Sr., made after he parted with the cause of action, could be received to defeat the claim. Nor does it make any difference that Gerding, Jr., also was present. It does not appear that he participated in the discussions at any of the meetings. Mere silence on his part cannot be construed into an admission to defeat the claim which had already passed to him under the assignment. The promise of the defendant or "account stated" was dated January 31, 1896. It is true that it contained a claim making the promise subject to the ratification of the reorganization committee. But it is evident that there was such ratification, inasmuch as before the meetings in question the committee had turned over to the defendant, as a separate transaction, $5,000 of the bonds after he had rendered an account in which the claim of Gerding for $5,000 for services was included.

Besides, we cannot find anything in the report of the meetings which tended to prove bad faith on the part of the plaintiff, as alleged in the answer. It is true that certain statements were made by some one of the committee, but it appears by the report that Gerding, Sr., denied the truth of such statements. We do not find anything in the report which would have required the referee to find as matter of fact that Gerding, Sr., had violated his agreement with the parties in interest. The evidence, in our opinion, therefore, was properly excluded, and the judgment should be affirmed.

Judgment affirmed, with costs. All concur.